UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DEREK A. VENTRESCA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 16 C 11583 |
| v. | ) |
| | ) Judge Sara L. Ellis |
| LAKE COUNTY, LAKE COUNTY | ) |
| SHERIFF'S OFFICE, MARK CURRAN, | ) |
| ALLISON BEATTY, CECILLIA CARDONA, | ) |
| JOHN DOE, PATTI MCDOUGALL, ARMOR | ) |
| CORRECTIONAL HEALTH SERVICES, | ) |
| INC., and ERIC MIZUNO, | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

After he was allegedly subjected to unlawful conditions while incarcerated at Lake County Jail and denied appropriate medical treatment for the injuries he sustained as a result of these conditions, Plaintiff Derek Ventresca brought this civil rights action against Defendants Lake County; the Lake County Sheriff's Office (the "Sheriff's Office"); Mark Curran, in both his individual capacity and his official capacity as the Sheriff of Lake County; Armor Correctional Health Services, Inc. ("Armor"); and Allison Beatty, Cecillia Cardona, Patti McDougall, and Eric Mizuno (collectively, the "Armor Defendants"); and John Doe pursuant to 42 U.S.C. § 1983.[1] Ventresca brings claims for unconstitutional conditions of confinement against Doe and Curran in his official capacity, as well as for deliberate indifference to his serious medical needs against Curran in his individual and official capacities, Armor, and the Armor Defendants. Finally, Ventresca seeks indemnification from Lake County for any judgment entered against Curran in his official capacity. Defendants have filed several motions to dismiss Ventresca's

---

[1] Ventresca has agreed to dismiss the Sheriff's Office as a party, acknowledging that naming Curran in his official capacity serves the same purpose. *See* Doc. 38 at 1–2.

amended complaint. Because Ventresca has sufficiently met his pleading burden with respect to his deliberate indifference claim against the Armor Defendants and the *Monell* claim for unlawful conditions for confinement, the Court allows these claims to proceed. But the Court dismisses his *Monell* claim for deliberate indifference to his medical needs because he has failed to sufficiently allege that his injuries arose from a widespread policy or practice.

## BACKGROUND[2]

On or about August 25, 2016, Ventresca was brought to the Lake County Jail for intake, booking, and pre-trial detention. He was placed in cell B12 with approximately twenty other inmates for four to five nights. The cell had a drain in the floor, which other inmates used as a toilet. The cell smelled of urine and urine frequently covered the floor. Additionally, fecal matter surrounded the exterior of the toilet in the cell. The cell was not cleaned during Ventresca's time there. Ventresca and the other inmates also did not have mattresses while in cell B12, sleeping instead on the concrete floor. After Ventresca requested a mattress from Doe, Doe denied his request and told him to take his complaint up with the Sheriff's Office. After sleeping on the concrete floor, Ventresca began to suffer from severe and persistent back pain; muscle and back stiffness; sharp shooting pains; and numbness in his lower back and legs. Ventresca also has trouble sleeping and performing normal daily tasks.

Since this time, Ventresca has repeatedly requested medical treatment for his chronic back pain. Armor provides medical services for the Lake County Jail, and employed Beatty, a medical administrator, Cardona, a nurse, McDougall, a nurse practitioner, and Mizuno, a doctor. Until December 2016, several Armor staff members, including Beatty, McDougall, and Mizuno, refused to let Ventresca be examined and treated by a doctor. On or about November 11, 2016,

---

[2] The Court takes the facts in the background section from Ventresca's amended complaint and presumes them to be true for the purposes of resolving the pending motions to dismiss. *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011).

Cardona met with Ventresca and confirmed that the conditions of his confinement in cell B12 likely caused his injuries. Despite this information, Cardona denied Ventresca's request to be seen by Mizuno for further analysis and treatment. Mizuno did prescribe painkillers for Ventresca's injuries even though he never evaluated Ventresca's injuries. After the painkillers proved ineffective and Ventresca renewed his requests to be examined and treated by a doctor, Beatty, McDougall, Cardona, and Mizuno denied those renewed requests. In December 2016, Mizuno examined Ventresca, performed a cursory evaluation, and prescribed additional painkillers that failed to remedy Ventresca's injuries. As part of the grievance process, Ventresca did receive a thicker mattress, but prison officials later removed the mattress from his cell claiming that they had no record of the grievance resolution.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

Ventresca's first amended complaint includes claims against the individual Defendants pursuant to § 1983 for unlawful conditions of confinement (Count I)[3] and deliberate indifference (Count II). Ventresca also seeks to proceed pursuant to *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978), for the alleged unconstitutional conditions of confinement as a result of the Sheriff's Office policy or practice (Count III) and for deliberate indifference to his medical needs against Armor and the Sheriff's Office through Curran (Count IV). Defendants move to dismiss Ventresca's deliberate indifference claims arguing that Ventresca has not properly alleged Defendants acted indifferently and that Ventresca suffered from a serious medical need. Additionally, Curran and Armor argue that Ventresca's *Monell* claims fail because they are stated in a conclusory fashion. The Court addresses each of these arguments in turn.

### I.  Deliberate Indifference Claim (Count II)

Ventresca alleges that Curran, in his individual capacity, Armor, and the Armor Defendants were deliberately indifferent to his serious medical needs.[4] "[T]he Fourteenth Amendment prohibits deliberate indifference to the serious medical needs of pretrial detainees." *Pittman ex rel. Hamilton v. County of Madison*, 746 F.3d 766, 775 (7th Cir. 2014) (citation omitted) (internal quotation marks omitted); *see Budd v. Motley*, 711 F.3d 840, 842 (7th Cir. 2013) (explaining that deliberate indifference claims arise under the Fourteenth Amendment rather than the Eighth Amendment, but courts use Eighth Amendment case law as a guide). To

---

[3] The individual unconstitutional conditions of confinement claim is directed solely against Doe. As no represented party has moved to dismiss this claim, the Court does not address it further in this Opinion.

[4] In responding to the motions to dismiss, Ventresca agrees to withdraw his deliberate indifference claim against Curran in his individual capacity without prejudice. *See* Doc. 52 at 2 n.1. He also indicates that the Court should not read Count II to include an individual claim against Armor. *See* Doc. 53 at 2 n.1. Therefore, the Court does not analyze this claim further against these Defendants.

state a deliberate indifference claim, Ventresca must allege both that he has an objectively serious medical condition, and that Defendants were subjectively aware of and consciously disregarded his medical need. *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994).

### A. Objectively Serious Medical Condition

First, the Court must determine whether Ventresca has adequately alleged that he suffered from an objectively serious medical condition. An objectively serious medical condition is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *King v. Kramer*, 680 F.3d 1013, 1018 (7th Cir. 2012) (quoting *Zentmyer v. Kendall County*, 220 F.3d 805, 810 (7th Cir. 2000)). An injury is also objectively serious if a "failure to treat [it] could result in further significant injury or the unnecessary and wanton infliction of pain." *Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008) (citation omitted). Although not "every ache and pain or medically recognized condition" constitutes a serious medical need, courts have recognized chronic and prolonged severe pain as a serious medical need. *Gutierrez v. Peters*, 111 F.3d 1364, 1372–73 (7th Cir. 1997).

Ventresca alleges that he suffered ongoing severe back pain, muscle and back stiffness, sharp shooting pains, and numbness in his lower bank and legs caused by the conditions in cell B12. He claims these injuries significantly impact his normal daily tasks and his sleeping. Defendants contend that back pain is a common ailment that does not rise to the level of a sufficiently serious medical need, but for the purposes of stating a claim at this stage, the Court finds Ventresca's allegations sufficient to establish that his chronic back pain amounts to a serious medical need, particularly where he received medical attention for it. *See, e.g.*, *Diaz v.*

*Godinez*, 693 F. App'x 440, 443 (7th Cir. 2017) (chronic back pain qualified as objectively serious even though it was treatable by over-the-counter pain relievers); *Withers v. Wexford Health Sources, Inc.*, 710 F.3d 688, 689 (7th Cir. 2013) (noting that fact that plaintiff received painkiller was evidence that he actually suffered from back pain).

  B.  **Subjective Element of Deliberate Indifference**

The subjective element of a deliberate indifference claim requires that the defendant act with a sufficiently culpable state of mind—"something akin to criminal recklessness"—requiring "that the defendant be aware of and disregard an excessive risk of serious harm to the inmate." *Norfleet v. Webster*, 439 F.3d 392, 397 (7th Cir. 2006). "For a medical professional to be held liable under the deliberate indifference standard, he must make a decision that is 'such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment.'" *Holloway v. Del. County Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012) (quoting *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008)). Neither negligence nor gross negligence constitutes deliberate indifference. *Farmer*, 511 U.S. at 836. But a delay in treatment that exacerbates an injury or unnecessarily prolongs pain may show deliberate indifference. *Perez v. Fenoglio*, 792 F.3d 768, 777–78 (7th Cir. 2015) (citations omitted). "Whether the length of delay is tolerable depends upon the seriousness of the condition and the ease of providing treatment" and "even brief, unexplained delays in treatment may constitute deliberate indifference." *Id.* (citations omitted).

Ventresca alleges that the Armor Defendants had actual knowledge of his need for treatment but acted with deliberate indifference in denying his treatment requests. Specifically, he claims Cardona confirmed that his injuries were caused by the conditions of confinement in

6

cell B12 on or about November 11, 2016 but denied his requests to be seen by Mizuno for further treatment, requests which were also turned down by Beatty, McDougall, and Mizuno until December 2016. Mizuno prescribed painkillers without evaluating Ventresca's injuries, and after these proved ineffective, the Armor Defendants delayed in scheduling an appointment with Mizuno. At a December 2016 evaluation with Mizuno, Mizuno performed only a cursory evaluation, continuing to prescribe pain relievers that did not help Ventresca. These allegations suggest that the Armor Defendants knew of his serious medical need and failed to act, either by delaying treatment so as to unnecessarily prolong his pain or failing to take reasonable steps to address the pain. A plaintiff's mere disagreement with a doctor's course of treatment does not arise to deliberate indifference, but the fact that Ventresca received "*some* medical care does not automatically defeat a claim of deliberate indifference," particularly here where Ventresca claims the painkillers Mizuno prescribed were ineffective. *See Edwards v. Snyder*, 478 F.3d 827, 831 (7th Cir. 2007); *see also Arnett v. Webster*, 658 F.3d 742, 752 (7th Cir. 2011) ("persist[ing] in a course of treatment . . . known to be ineffective" can establish deliberate indifference). Factual questions concerning the appropriateness of Ventresca's treatment are issues to be resolved at the summary judgment stage, not on a motion to dismiss.

Ventresca also has sufficiently included allegations of each of the Armor Defendants' personal involvement to plausibly state a claim of deliberate indifference, suggesting that each had direct knowledge of Ventresca's injuries. *See J.H. ex rel. Higgin v. Johnson*, 346 F.3d 788, 793 (7th Cir. 2003) ("[T]o recover damages against a state actor under § 1983, a plaintiff must show the actor was personally responsible for the constitutional deprivation.") (citation omitted) (internal quotation marks omitted). Some of the Armor Defendants complain that Ventresca has not adequately identified the wrongful conduct attributed to each of them. But Rule 8(a) does

not require a plaintiff, "without the benefit of discovery, to connect every single alleged instance of misconduct in the complaint to every single specific [defendant]." *Koh v. Graf*, No. 11-cv-02605, 2013 WL 5348326, at *4 (N.D. Ill. Sept. 24, 2013). Although Ventresca has grouped some of his allegations together against the Armor Defendants, he has sufficiently provided enough detail about the nature of the allegations to put each Defendant on fair notice of the claims. *See Frazier v. U.S. Bank Nat'l Ass'n*, No. 11 C 8775, 2013 WL 1337263, at *3 (N.D. Ill. Mar. 29, 2013) (collecting cases). Although the evidence may demonstrate that the Armor Defendants did not exercise deliberate indifference, Ventresca's allegations are enough to state a claim at the pleading stage against them.

## II.  *Monell* Claims (Counts III and IV)

### A.  Conditions of Confinement against Curran (Count III)

In Count III, Ventresca brings a *Monell* claim alleging that the Sheriff's Office, through Curran, maintained a policy, practice, or custom of detaining inmates in holding cells for indefinite periods of time in unsanitary conditions and without proper places to sleep. Curran seeks dismissal of this *Monell* claim, arguing that Ventresca has not adequately alleged facts allowing the Court to draw a reasonable inference that the Sheriff's Office maintains a policy, custom, or practice of subjecting inmates to unlawful conditions of confinement.

Liability under *Monell* may be premised on (1) an express policy that, when enforced, causes a constitutional violation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well-settled as to constitute a custom or usage with the force of law; or (3) a constitutional injury caused by a person with final policymaking authority. *McCormick v. City of Chicago*, 230 F.3d 319, 324 (7th Cir. 2000). To adequately allege a *Monell* policy or practice claim, Ventresca must "plead [ ] factual content that allows the Court to draw the reasonable inference that the [Sheriff's Office] maintained a

policy, custom, or practice" that contributed to the alleged violation. *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (citation omitted) (internal quotation marks omitted).

Curran complains that Ventresca's allegations refer only to problems he personally experienced and thus cannot give rise to a claim for a widespread policy or practice. But recently, the Seventh Circuit has reminded courts not to apply a "heightened pleading standard" to *Monell* claims. *White v. City of Chicago*, 829 F.3d 837, 844 (7th Cir. 2016) (quoting *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164, 113 S. Ct. 1160, 122 L. Ed. 2d 517 (1993)). This means that a plaintiff need not identify other examples of the complained of practice so as to state a *Monell* claim; rather, a plaintiff may rely soley on his own experience. *See id.* at 844 (noting that plaintiff "was not required to identify every other or even one other individual who had been arrested pursuant to a warrant obtained through the complained-of process"); *Williams v. City of Chicago*, No. 16-cv-8271, 2017 WL 3169065, at *8–9 (N.D. Ill. July 26, 2017) ("Post-*White* courts analyzing *Monell* claims . . . have 'scotched motions to dismiss' premised on arguments that the complaint does not contain allegations beyond those relating to the plaintiff." (collecting cases)).

Although Ventresca's allegations regarding his own experiences would allow him to move past a motion to dismiss, he has included allegations concerning unconstitutional conditions that others experienced as well. *See Barwicks v. Dart*, No. 14-cv-8791, 2016 WL 3418570, at *4 (N.D. Ill. June 22, 2016) (at summary judgment, single incident cannot establish *Monell* claim, but at the motion to dismiss stage, a plaintiff "need only *allege* a pattern or practice, not put forth the full panoply of evidence from which a reasonable factfinder could conclude such a pattern exists"). He also indicates that he was confined in cell B12 with approximately twenty other inmates, all of whom experienced the same conditions as he did. He

9

specifically alleges that none of the inmates received mattresses and that when he asked why he could not have a mattress, he was told he could take his complaint up with the Sheriff's Office, suggesting that the lack of mattresses was a general policy or practice, not an isolated incident. And Ventresca claims that these same inmates experienced the unsanitary conditions of which he complains, with the cell smelling of urine, fecal matter being left in the cell, and the cell not properly cleaned. Although Curran argues it is unclear whether these other inmates were housed in the cell for only a short period of time, Ventresca's allegations at least suggest that other inmates similarly were subjected to the alleged policy or practice of which Ventresca complains. Therefore, the Court finds that Ventresca can proceed with his *Monell* claim against Curran concerning the conditions of confinement at the Lake County Jail.

B.     **Deliberate Indifference against Curran and Armor (Count IV)**

Curran and Armor both seek dismissal of Ventresca's *Monell* claim for deliberate indifference against them, arguing that Ventresca has not adequately alleged facts allowing the Court to draw a reasonable inference that the Sheriff's Office and Armor maintain a policy, custom, or practice of subjecting inmates to deliberately indifferent medical care. Even though Armor is a private company, it may be held liable for deliberate indifference under *Monell*. *Chatham v. Davis*, 839 F.3d 679, 685 (7th Cir. 2016) (*Monell* liability "applies in § 1983 claims brought against private companies acting under color of state law").

Ventresca claims that the Sheriff's Office, through Curran, seeks to minimize medical care expenses regardless of inmate needs, causing the denial of access to appropriate medical care, and that Armor carries out this practice. Although, as noted above, Ventresca may be able to demonstrate an official policy or practice based solely on his own experience, *White*, 829 F.3d at 844, he must still provide some facts to support his claim that the Sheriff's Office and Armor had a policy or practice of minimizing medical expenses regardless of inmate needs. Here,

however, he has failed to do so, with no suggestion that any delays in treatment or decisions in care were due to policies or practices instituted by Armor or the Sheriff's Office so as to suggest a widespread issue. *See Harris v. Wexford Health Sources, Inc.*, No. 15-cv-10936, 2017 WL 4467480, at *3–4 (N.D. Ill. Oct. 6, 2017) (dismissing *Monell* claim against Wexford Health Sources where complaint did not adequately provide facts to support how plaintiff's injuries were caused by Wexford's alleged policies or practices). Instead, one could read Ventresca's treatment by the Armor Defendants as a random event, which would not support a *Monell* claim. Therefore, the Court dismisses Ventresca's *Monell* claim for deliberate indifference against Curran and Armor without prejudice.[5]

## CONCLUSION

For the foregoing reasons, the Court denies Defendant Beatty, Cardona, McDougall, and Mizuno's motions to dismiss [23, 26, 63], grants in part and denies in part the Sheriff Defendants' motion to dismiss [38], and grants in part and denies in part Armor's motion to dismiss [49]. The Court dismisses the § 1983 deliberate indifference claim against Curran and Armor (Count II) and the *Monell* claim for deliberate indifference (Count IV) without prejudice. The Court dismisses the Lake County Sheriff's Office and Lake County from the case without prejudice. The Court orders the Armor Defendants to answer the remaining allegations of the amended complaint by February 13, 2018.

Dated: January 24, 2018

SARA L. ELLIS
United States District Judge

---

[5] Because no claims remain against Curran in his individual capacity, the Court dismisses Ventresca's request for indemnification from Lake County, which results in its dismissal from the suit.

11